367 So.2d 606 (1978)
Mark MIKENAS, Appellant,
v.
STATE of Florida, Appellee.
No. 49928.
Supreme Court of Florida.
November 9, 1978.
Rehearing Denied March 7, 1979.
*607 Ellen M. Condon, Temple Terrace, for appellant.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
We review this case to determine whether the appellant was convicted and sentenced to death for first-degree murder and second-degree felony-murder in accord with statutes and court decisions. We affirm the convictions, but we remand the case to the trial court for resentencing because of improper application of aggravating circumstances. Article V, Section 3(b)(1), Florida Constitution.
On November 3, 1975, the appellant, Mark Mikenas, his brother, Vito Mikenas, and a friend, Mark Rinaldi, robbed a convenience store in Tampa, Florida. During the robbery the appellant carried a .38 caliber revolver. There were no customers in the store during the robbery. Upon entering the store, the appellant and his co-felons forced the lone store clerk into a back room of the building. Unknown to the robbers, Gary Barker, an auxiliary deputy sheriff, observed the robbery from a hidden position in the store. When an automobile unexpectedly arrived at the front of the store, appellant and his co-felons tried to exit the store through a back door. Barker, with drawn pistol, stopped them and placed them under arrest.
Seconds later, Anthony Williams, an off-duty Tampa policeman in civilian attire, came into the store through the front door. Barker called to Williams for help and informed him that a robbery was underway. Immediately thereafter, appellant and Barker fired at each other with both missing. Barker later killed Vito and wounded the appellant as they ran towards the front of the store. As appellant was falling to the floor, he shot and killed Anthony Williams, the Tampa police officer. Ann Williams, the wife of Anthony Williams, herself a police officer in uniform, arrested appellant. Barker arrested Rinaldi.
The indictment charged the appellant and Rinaldi, in two counts, with first-degree murder of Anthony Williams and with *608 second-degree murder of Vito Mikenas who "was killed by a person or persons other than the person or persons engaged in the perpetration or attempt to perpetrate said robbery... ."
The appellant pleaded guilty to murder in the first degree for the death of Anthony Williams and pleaded nolo contendere to the charge of second-degree murder of his brother, Vito. Appellant reserved the right to appeal the applicability of Section 782.04(3), Florida Statutes (1975), the second-degree felony murder statute, applied to the facts of this case. The judge adjudged appellant guilty, and a jury selected for the sole purpose of recommending sentence, rendered a recommendation of death. The judge sentenced appellant to death.
The appellant contends that the trial judge committed reversible error by (1) abusing his discretion in allowing the deceased police officer's wife to testify from a wheelchair and in refusing to recuse himself; (2) holding that Section 782.04(3), Florida Statutes (1975), the second-degree felony murder statute, applied to the facts of this case; and (3) misapplying the aggravating and mitigating circumstances listed in Section 921.141, Florida Statutes.

I
When Ann Williams, the police officer who arrested appellant and the wife of the deceased police officer, was called as a witness, appellant moved for a continuance because she was in a wheelchair. The motion for continuance was denied. The court did, however, give a cautionary instruction to the jury indicating that the physical condition of Ann Williams was in no way related to the homicide. The court stated during the course of that instruction that "her medical or physical condition is something foreign to and not related in any way to the incident."
We find no error in the trial judge allowing this witness to testify from a wheelchair. The jury understood that the incident on trial was not the reason for her inability to stand. She had ample relevant evidence to present to the jury as to the "triggerman." In the absence of a showing that the trial judge abused his discretion, the ruling will not be disturbed. Zide v. State, 212 So.2d 788 (Fla. 3d DCA 1968), cert. denied 394 U.S. 911, 89 S.Ct. 1026, 22 L.Ed.2d 223 (1969). The appellant has failed to make an adequate showing.
The appellant also alleges that the trial judge should have recused himself because prior to the penalty proceedings in this case, while addressing Rinaldi, the trial judge stated:
Fortunately for you, son, the only thing that probably saved you from a possible death sentence is the fact that when that officer told you to stop, you stopped, and, secondly, that you didn't have the firearm.
These remarks took place while Rinaldi was being sentenced for murder in the second-degree. We find no merit in the appellant's contention that these remarks, made to his co-defendant at sentencing, indicated a bias on the part of the trial judge regarding the sentence that appellant should receive. The jury, unaware of this remark, recommended death.

II
Section 782.04(3), Florida Statutes (1975), reads as follows:
When a person is killed in the perpetration of, or in the attempt to perpetrate, any arson, involuntary sexual battery, robbery, burglary, kidnapping, aircraft piracy, or unlawful throwing, placing, or discharging of a destructive device or bomb by a person other than the person engaged in the perpetration of or in the attempt to perpetrate such felony, the person perpetrating or attempting to perpetrate such felony shall be guilty of murder in the second degree, which constitutes a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or s. 775.084. [Emphasis added.]
The appellant contends that Section 782.04(3), Florida Statutes (1975) is inapplicable *609 to the facts of his case. He, in effect, says that it is clear from the evidence that Barker, the auxiliary deputy sheriff, shot and killed Vito. If this is true, he says, and Vito is a co-perpetrator, no one can be charged with the murder of Vito. He argues that only "innocent" persons killed during the perpetration of a felony were intended by the Legislature to be included in the phrase "a person is killed." From this posture, he asserts that his motion to dismiss should have been granted.
The language of Section 782.04(3) is not ambiguous or vague. It refers to "a person" and must mean "any person." If the Legislature had intended something other than this, it could have inserted the word "innocent."
We are mindful that State v. Williams, 254 So.2d 548 (Fla. 2nd DCA 1971), held that under Section 782.04(1), Florida Statutes, the first-degree felony-murder statute, only the death of innocent persons is sufficient to sustain a charge of first-degree felony-murder against a felony perpetrator. The Second District Court stated in that case:
The test we suggest is predicated upon the obvious ultimate purpose of the felony murder statute itself which is, we think, to prevent the death of innocent persons likely to occur during the commission of certain inherently dangerous and particularly grievous felonies. [At 550.]
Since we are here concerned with subsection (3) of 782.04, the second-degree felony murder statute, rather than subsection (1), the first-degree felony murder statute, we need not determine whether the reasoning and rationale in State v. Williams, supra, is correct. We reserve decision on that point until the question is squarely presented. It is sufficient here to hold that there is nothing in the clear language or history of Section 782.04(3) which limits its application to innocent persons killed by one perpetrating or attempting to perpetrate a felony.

III
In sentencing the appellant to death, the court made the following findings of fact in support of the death penalty:
"The Court having carefully considered and reviewed the plea of Guilty entered by the defendant MARK MIKENAS, in this cause to the charge of Murder in the First Degree, together with the presentence investigation, testimony, evidence and the jury's recommendation of the death penalty in this case, and in consideration thereof makes the following findings of fact:
"AS TO AGGRAVATING CIRCUMSTANCES:
"(A) That the defendant, MARK MIKENAS, murdered Anthony Williams while engaged in the commission of a felony, to-wit: robbery.
"(B) That the defendant, MARK MIKENAS, committed the crime of murder while in the perpetration of the crime of robbery for pecuniary gain.
"(C) That the defendant, MARK MIKENAS, had been previously convicted of the offense of robbery in the State of New York for which he was sentenced to a prison term of four (4) years and at the time of the offenses committed in this case he was on parole on the New York sentence and there was outstanding against him a parole violation warrant.
"(D) That the defendant, MARK MIKENAS, in committing the crime for which he is to be sentenced, knowingly created a great risk of death to many persons.
"(E) That the crime for which the defendant, MARK MIKENAS, is to be sentenced was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
"(F) That the defendant, MARK MIKENAS, has a substantial history of prior criminal activity.
"AS TO MITIGATING CIRCUMSTANCES:
"The age of the defendant, MARK MIKENAS, to-wit: age 22 years, would in the Court's opinion be the only mitigating circumstance shown by the defendant, MARK MIKENAS, in this case.

*610 "IN CONSIDERATION THEREOF, it is the opinion and determination of the Court, and the Court so finds, that the aggravating circumstances far outweigh the mitigating circumstances in this case and, therefore, the jury's recommendation of the death penalty is appropriate in the case of the defendant, MARK MIKENAS, and it is so ordered."
Section 921.141, Florida Statutes, requires the trial judge to logically consider the relationship between aggravating circumstances listed therein and mitigating circumstances and arrive at a sentence based upon reason. In State v. Dixon, 283 So.2d 1 (Fla. 1973), we said:
The fourth step required by Florida Statute 921.141, F.S.A., is that the trial judge justifies his sentence of death in writing, to provide the opportunity for meaningful review by this court. Discrimination or capriciousness cannot stand where reason is required, and this is an important element added for the protection of the convicted defendant. Not only is the sentence then open to judicial review and correction, but the trial judge is required to view the issue of life or death within the framework of rules provided by the statute. [At 8.]
Among those matters listed as mitigating circumstances is subsection (6)(a) of 921.141, which provides: "The defendant has no significant history of prior criminal activity." The Legislature intended absence from the criminal arena to be weighed favorably for a defendant in a capital case. When the trial judge entered under aggravating circumstances: "(F) that the defendant, MARK MIKENAS, has a substantial history of prior criminal activity," he placed into the balance established by the statute, a nonstatutory aggravating factor. The inclusion of this non-statutory aggravating circumstance indicates that the weighing process dictated by statute was not followed. In Elledge v. State, 346 So.2d 998 (Fla. 1977), we said:
Would the result of the weighing process by both the jury and the judge have been different had the impermissible aggravating factor not been present? We cannot know. Since we cannot know and since a man's life is at stake, we are compelled to return this case to the trial court for a new sentencing trial at which the factor of the Gaffney murder shall not be considered... . This result is dictated because, in order to satisfy the requirements of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the sentencing authority's discretion must be "guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition." (Emphasis supplied.) Proffitt v. Florida, 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976).
In capital cases, it is this court's responsibility to insure that the trial judge remains faithful to the dictates of Section 921.141, Florida Statutes in the sentencing process. It is not the function of this court to cull through what has been listed as aggravating and mitigating circumstances in the trial court's order, determine which are proper for consideration and which are not, and then impose the proper sentence. In accordance with the statute, the culling process must be done by the trial court. It was not done in this case. A substantial history of prior criminal activity is not an aggravating circumstance under the statute. Since mitigating circumstances are present, Elledge, supra, dictates resentencing.
We hold that the trial judge did not abuse his discretion in allowing the witness to testify from a wheelchair or in refusing to recuse himself. The second-degree felony murder statute applied to the facts of this case. The trial judge improperly considered a non-statutory aggravating factor. The convictions were proper.
Accordingly, the convictions are affirmed, and the case remanded to the trial court for resentencing without further deliberations by a jury.
It is so ordered.
*611 ENGLAND, C.J., and BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
ADKINS, J., concurs in part and dissents in part with an opinion.
ADKINS, Justice, concurring in part, dissenting in part.
I concur in that portion of the decision affirming the conviction.
I dissent in the next portion of the decision which sets aside the sentence and refers the case back to the trial judge for further consideration.
The fact that a capital crime was committed in the course of a robbery exemplifies the pecuniary motive at the time of the murder. This constitutes one factor which must be considered in the case. Provence v. State, 337 So.2d 783 (Fla. 1976). In the Provence case, the pecuniary motive at the time of the murder was only one aggravating factor. The sentencing jury had recommended life imprisonment and the subsequent imposition of the death penalty by the trial judge was set aside under the principles announced in Tedder v. State, 322 So.2d 908 (Fla. 1975).
In Knight v. State, 338 So.2d 201 (Fla. 1976), the defendant kidnapped a man and his wife in an effort to extort money as a ransom. The imposition of the death penalty was warranted because the defendant was shown to have murdered two people in the course of the kidnapping and the robbery.
In the case sub judice, the trial judge found only one mitigating circumstance, to wit: Defendant was 22 years old at the time the crime was committed. In Songer v. State, 322 So.2d 481 (Fla. 1975), the fact that defendant was 23 years of age was not a mitigating circumstance. In the Songer case, a trooper with the Florida Highway Patrol was shot as he approached the automobile in which defendant was sitting. The defendant had three prior felony convictions and was not so intoxicated at the time of the crime as to be unaware of what he was doing.
In Cooper v. State, 336 So.2d 1133 (Fla. 1976), the defendant and his accomplice Ellis robbed a grocery store. As they were making their escape they were stopped by an officer. After being stopped, either defendant or his accomplice walked to the officer's patrol car and fired two shots into his head. He was killed instantly. In Cooper, the defendant was previously convicted of armed robbery; the murder of the police officer was committed while the defendant was in the perpetration of a robbery and in flight after committing the robbery; the murder was committed for the purpose of avoiding or preventing the lawful arrest of the defendant; and there were no mitigating circumstances. The sentence of death in Cooper upon conviction of first degree murder was held to be warranted.
In the case sub judice, the homicide was committed while the defendant was engaged in or escaping from the commission of a robbery. The defendant was previously convicted of the offense of robbery. The defendant knowingly created great risk of death to many persons. See Alvord v. State, 322 So.2d 533 (Fla. 1975). Also, the felony was committed for the purpose of avoiding or preventing a lawful arrest or for the purpose of effecting an escape from custody. Defendant admitted upon cross-examination that he had been convicted of a crime "six or seven" times.
Appellant says that in considering the aggravating factors listed in Section 921.141, Florida Statutes (1975), the trial judge considered prior criminal activity when, in fact, the history of prior criminal activity should be considered only as a mitigating circumstance. Section 921.141(6)(a), Florida Statutes (1975). It is utterly illogical to say that the absence of a past history of criminal activity is a mitigating circumstance, but that the existence of such a past is not a relevant factor to be considered. In Knight v. State, supra, the trial judge listed as a finding under mitigating circumstances that "the defendant has a history of prior criminal activity," 338 So.2d at 202. To say that the prior criminal activity must be listed under mitigating circumstances rather *612 than aggravating circumstances is merely placing form over substance. In State v. Dixon, 283 So.2d 1 (Fla. 1973), we said:
"The fourth step required by Fla. Stat. § 921.141, F.S.A., is that the trial judge justifies his sentence of death in writing, to provide the opportunity for meaningful review by this Court. Discrimination or capriciousness cannot stand where reason is required, and this is an important element added for the protection of the convicted defendant. Not only is the sentence then open to judicial review and correction, but the trial judge is required to view the issue of life or death within the framework of rules provided by the statute.
* * * * * *
"As to what is significant criminal activity, an average man can easily look at a defendant's record, weigh traffic offenses on the one hand and armed robberies on the other, and determine which represents significant prior criminal activity. Also, the less criminal activity on the defendant's record, the more consideration should be afforded this mitigating circumstance." At 8-9.
The fundamental purpose of the written findings is to guarantee the imposition of the death penalty becomes a matter of reasoned judgment rather than unbridled discretion. There is no requirement these findings of fact be in any particular form, as long as it appears the trial judge viewed the issue of life or death within the framework of the rules provided by statute.
Section 921.141(1), Florida Statutes (1975), in prescribing the manner in which the sentencing procedure should be conducted, provides in part:
"In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (6) and (7). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the constitutions of the United States or of the State of Florida."
In Alvord v. State, supra, the Court allowed in evidence proof of the commission of a crime of which the appellant had previously been found not guilty by reason of insanity. This Court said:
"In the penalty proceedings certain types of evidence which may be inadmissible in a trial on guilt may be admissible and relevant to enable the jury to make an informed recommendation based on the aggravating and mitigating circumstances concerning the acts committed. In fact, one of the statutory mitigating circumstances is the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Fla. Stat. § 921.141(6)(f), F.S.A. There should not be a narrow application or interpretation of the rules of evidence in the penalty hearing, whether in regard to relevance or to any other matter except illegally seized evidence. State v. Dixon, supra. See also Sullivan v. State, 303 So.2d 632 (Fla. 1974), and Smith v. State, 303 So.2d 694 (Fla. 1st DCA 1974). This testimony was properly allowed into evidence." 322 So.2d at 538-39.
In Dobbert v. State, 328 So.2d 433 (Fla. 1976), the defendant was convicted of first degree murder, the victim being his child. Evidence of prior offenses and evidence of beatings which were never prosecuted were allowed in the evidence in determining the penalty. This Court affirmed the death penalty.
The majority holds that the trial judge may have improperly considered as one of the aggravating circumstances the fact that the defendant had "a substantial history of prior criminal activity." The defendant admitted that he had been convicted of a crime "six or seven" times. The majority holds that the trial judge properly considered *613 the prior convictions as set forth in the sentencing order, but improperly considered the "prior criminal activity" of the defendant. The question arises as to how you could consider prior convictions, without at the same time considering criminal activity. However, if the trial judge should consider prior criminal activity as being a part of the aggravating circumstances of prior convictions, then the matter must be returned to the trial judge for reconsideration and resentencing. This form of logic speaks for itself.
The sentence of death was properly imposed as a result of the reasoned judgment and not by counting and subtracting different factors.