463 So.2d 186 (1984)
Tommy Lee RANDOLPH, Appellant,
v.
STATE of Florida, Appellee.
No. 54869.
Supreme Court of Florida.
December 20, 1984.
Rehearing Denied February 26, 1985.
*188 Richard L. Jorandby, Public Defender, Craig S. Barnard, Chief Asst. Public Defender, and Jerry L. Schwarz, Jon May and Michael A. Mello, Asst. Public Defenders, Fifteenth Judicial Circuit, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., and Robert L. Bogen and Marilyn J. Altman, Asst. Attys. Gen., West Palm Beach, for appellee.
PER CURIAM.
This is an appeal from a judgment of guilt of murder in the first degree and attempted robbery and a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
This case involves the shooting death of Joseph Chesser, III, during the early morning hours of February 24, 1978. The state's chief witness was Althea Glinton, a co-defendant, who was allowed to plead no contest to second-degree murder in exchange for her testimony. She was awaiting sentence at the time of trial.
Randolph was charged with, inter alia, first-degree murder, attempted robbery, and conspiracy to commit robbery. Glinton was Randolph's girlfriend and a prostitute. She turned over the money which she made from her work to Randolph. On the night of the homicide, he wanted Glinton to turn one more trick before she went home. Glinton then saw the victim, one of her regular customers, and solicited him. She got into the victim's truck and they pulled up in front of a rooming house. When Glinton and the victim had finished, and Glinton was leaving the truck, Randolph showed up and pushed Glinton away. Glinton then ran into a nearby boarding house because she was scared. She overheard Randolph tell the victim not to try anything and Randolph wouldn't shoot. Glinton then heard two gunshots.
Glinton testified that Randolph had a pistol which would occasionally get stuck when you tried to shoot it. Misfired twenty-five caliber cartridges were found in Randolph's residence and also at the scene *189 of the homicide. The bullet which resulted in the victim's death was a twenty-five caliber bullet.
After the shooting, Randolph asked Glinton if the victim had any money. Receiving an affirmative reply, Randolph walked over to the victim's truck (with the victim's body lying inside) and looked in the window. Randolph got into the truck, and a witness testified that she saw him get something.
The state introduced evidence that, just a few days earlier, Ken Eller and Mike Hayes "picked up" Althea Glinton and another woman in the same general area. After finishing their activities, they were approached by Randolph and another individual upon leaving the rooming house. The girls disappeared and Eller and Hayes were robbed at gunpoint. Randolph had a twenty-five caliber gun and was overheard saying that he could have killed one of them because he didn't have any money.
Randolph objected to this testimony on the grounds that it was not proper under the rule as announced in Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). In that case the Court laid down the test of the admissibility of such evidence as being one of relevancy. Even if the evidence in question tends to reveal the commission of a collateral crime, it is admissible if found to be relevant for any purpose save that of showing bad character or propensity.
The Eller and Hayes incident was extremely similar to the incident which resulted in the murder of Chesser. The two incidents took place in the same general area within days of each other, the same participants were involved, the same type weapon was involved, the same modus operandi was involved, the same type of victim was involved, and the same type of offense was involved. Collateral crime evidence was clearly relevant and admissible as it related to a material fact in issue. This collateral crime evidence demonstrated Randolph's motive, intent, and state of mind in approaching the victim's truck and eventually killing the victim.
Where evidence of a collateral crime is relevant and admissible, the prosecution should not go too far in introducing evidence of other crimes. The state should not be allowed to go so far as to make the collateral crime a feature instead of an incident. Williams v. State, 117 So.2d 473 (Fla. 1960). Collateral crime evidence was not a feature of this trial.
The state's chief witness was a co-defendant who was a self-declared prostitute. It was important to the state's case to show that the modus operandi had been followed by Randolph in this collateral offense. It certainly corroborated the testimony of Glinton. Testimony was geared toward proving a material issue of the case rather than demonstrating Randolph's bad character. The evidence was admissible. Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981).
Randolph also argues that evidence of the collateral crime greatly prejudiced him on the question of an appropriate sentence. The fact that evidence might prejudice the defendant during the sentencing procedure is not a ground for excluding it during the guilt phase of the trial, as long as the evidence is relevant and admissible. During the sentencing proceedings, Randolph admitted that he had been previously convicted at least three times. This objection to the admissibility of the collateral crime evidence is also without merit.
Randolph argues that the court committed reversible error when it allowed the father of the deceased to testify. He contends, generally, that the testimony of a member of a victim's family is inadmissible. While it is true that the court must guard against the possibility that sympathy will be injected in the trial, and that is why, normally, a family member should not be called to identify the victim, such evidence is admissible if other witnesses could not perform that function as well. If the family member has relevant testimony which is *190 peculiarly within his knowledge, such testimony is always admissible. Randolph was charged with first-degree murder, which charge could be proved by evidence of murder having been committed during the course of a robbery. Additionally, Randolph was charged with attempted robbery and conspiracy to commit robbery.
The father testified that the victim was a partner in business with him and, on the night the victim was murdered, the victim received $100 cash from his father as part of the victim's paycheck. This testimony was relevant to demonstrate that just a few hours before his murder the victim had $100 in cash on him. Later, when the victim was found, only $20 was found hidden in a passenger door compartment to his truck. Testimony as to how much money the victim initially had on the evening in question, as compared to how much money was found on his body, was relevant to demonstrate the distinct probability that Randolph approached the victim on the evening in question to rob him, and in fact, did rob him. Testimony of the father was properly introduced at the trial. See Lewis v. State 377 So.2d 640 (Fla. 1979).
Randolph contends that his custodial statements to the police and the physical evidence seized pursuant to a consent to search were the fruit of an illegal arrest. The police arrested Randolph at his home but without an arrest warrant, so Randolph relies upon Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), where the United States Supreme Court held that, absent exigent circumstances, a warrantless arrest at a person's home is a violation of the fourth amendment.
Payton is not applicable. It appears that exigent circumstances were present so that the arrest in the case sub judice was an exception to the general rule requiring a warrant.
Edna Plain testified that she saw Althea Glinton and Randolph during and immediately following the commission of the murder. At the scene of the crime, she overheard Randolph ask Glinton if the victim had any money on him. Randolph and Glinton asked Plain to get into their car, but Plain refused because she was afraid.
The homicide occurred in the early morning hours. Officer Walker arrived on the scene shortly after seven o'clock a.m. Officer Walker had known Edna Plain for five or ten years and she had given him information in the past which had proven to be reliable. Plain explained to Officer Walker that she had been looking for him all night. She told the officer that she knew who was involved in the crime and that she wanted the officer to "hurry up and get those people, because she was afraid that someone  they would find out sooner or later that somebody had told them about this incident." Officer Walker testified as follows with regard to his conversation with Plain:
After she told me to rush, get as fast as I could to 21st Street and pick this man up, because she was in fear of her life, she felt that this man would kill her, and told me that she wouldn't be satisfied until this man was picked up and for me to notify her that this man was locked up in jail, then she would have peace of mind.
She told me that she really wanted me to catch  get Tommy Lee Randolph off the street, she was afraid for her life, she feels that this man would kill her because he knew that she was the onliest one that knew about the incident (sic).
In the conversation that we had, the time that we were together, she explained to me what had took place on 9th Street and what Beeper had said. She told me that she knew that this man had  Randolph had got involved in something bad and she knew about it and she wanted him off the streets, because she was afraid of her life. She was in danger from this man who knew that she knew about it and he would probably hurt her. And she wouldn't have peace of mind until we got him off the streets.
The officer immediately went to Randolph's house to look for him before Randolph was able to find Edna Plain. We must determine *191 whether these are exigent circumstances.
In State v. Hetzko, 283 So.2d 49 (Fla. 4th DCA 1973), the court, speaking through Judge Mager, explained the "exigency" rule: "The criterion [of the exigency rule] is the reasonableness of the belief of the police as to the existence of an emergency, not the existence of an emergency in fact." Id. at 52, quoting Webster v. State, 201 So.2d 789 (Fla. 4th DCA 1967). Officer Walker was on the scene a few hours after the homicide was committed. He knew Edna Plain and the parties involved. Edna Plain was legitimately concerned for her life and the officer acted prudently in attempting to locate Randolph before he was able to find Edna Plain and harm her, an important state witness. The officer was justified in attempting to apprehend Randolph as soon as possible pursuant to his belief that Edna Plain was in imminent peril of bodily harm. We have considered this question even though Randolph failed to properly preserve the point for appellate review. Fla.R.App.P. 9.110(h); Castor v. State, 365 So.2d 701 (Fla. 1978); Kelly v. State, 202 So.2d 901 (Fla. 2d DCA 1967), appeal dismissed, 211 So.2d 209 (Fla. 1968). Randolph claims that the statements to police were the fruits of an illegal arrest and, therefore, were inadmissible. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). We have held the arrest to be legal, so this argument is without merit. Likewise, we reject Randolph's argument concerning the consent to search and the admissibility of the evidence seized pursuant to the search.
The rule of witness sequestration was invoked. The court granted the request of the state that detective Earl Skovsgard, the principal investigating officer in the case, be excepted from the sequestration rule. Randolph now argues that the trial court committed reversible error by excepting this state witness from the rule of witness sequestration and by failing to conduct a hearing after Randolph alleged that he would be prejudiced as a result of the court's ruling.
The rule of witness sequestration is not an absolute rule which must be invoked at the mere request of counsel. The trial judge is endowed with a sound judicial discretion to decide whether particular prospective witnesses should be excluded from the sequestration rule. The reason for the rule is to avoid the coloring of a witness's testimony by that which he has heard from other witnesses who have preceded him on the stand. Spencer v. State, 133 So.2d 729 (Fla. 1961), cert. denied, 369 U.S. 880, 82 S.Ct. 1155, 8 L.Ed.2d 283 (1962). The testimony of detective Skovsgard was limited to the fact that Randolph and Althea Glinton signed consent-to-search forms, which were admitted into evidence, and to the fact that Randolph gave the detective a taped statement. This is not a situation where the witness who was excluded from the sequestration rule was a principal actor in the crime, nor is this a case where the testimony of the witness was actually suggested by what he heard in the courtroom.
Subsequent to the trial in the case sub judice, the decision in Thomas v. State, 372 So.2d 997 (Fla. 4th DCA 1979), was rendered, and the court held that a detective should not have been allowed in the courtroom, but that the presence of the detective in the courtroom did not lead to an improper conviction. In its opinion the court said:
While it may be helpful, even necessary in some complex cases, to have a police witness to remain in the courtroom during trial and thus be excluded from the witness rule we deem it proper to advise the trial court to make a finding no real prejudice would result from this procedure if the accused objects after invoking the rule. A hearing to determine if the police witness' presence is necessary and indispensable and non-prejudicial would be the way to accomplish a proper finding.
372 So.2d at 999.
In our opinion a trial court should not, as a matter of course, permit a witness to remain in the courtroom during the trial when he or she is not on the stand, unless *192 it is shown that it is necessary for the witness to assist counsel in trial and that no prejudice will result to the accused. A hearing to determine these matters should be conducted if the rule excluding and sequestering witnesses has been invoked.
We cannot say that the presence of detective Skosvgard in the courtroom led to an improper conviction. The action of the trial court was improper, but does not warrant a reversal of Randolph's convictions.
Randolph's attack upon the sufficiency of the evidence is without merit, as the evidence is sufficient to sustain a conviction either upon the theory of premeditated design or on the theory of felony murder.
Randolph argues that during the sentencing procedure the prosecution elicited evidence before the jury that he had prior convictions for nonviolent felonies. The state attempted to introduce into evidence recorded adjudications for nonviolent felonies. The state attorney asked the witness if he could identify the various state exhibits. At no time were these exhibits identified before the jury for what they were, i.e., "adjudications." Randolph made no objection to the admissibility of the evidence. The jury was told what the exhibits were. He is now estopped from claiming that this matter represents grounds for a reversal. See, e.g., Clark v. State, 363 So.2d 331 (Fla. 1978).
Randolph testified during the sentencing procedure. The state properly questioned him as to how many times he had previously been convicted. Once he became a witness, he could be examined the same as other witnesses on matters which illuminate the quality of his testimony. Johnson v. State, 380 So.2d 1024 (Fla. 1979). As stated by this Court in Booker v. State, 397 So.2d 910, 918 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981):
When the defendant elects to testify during the sentencing proceedings, it is appropriate for the prosecutor to cross-examine him concerning previous criminal activity. Unless this mitigating factor is negated, there would be a presumption that defendant had not engaged in any previous criminal activity.
Randolph also says that the trial judge limited his consideration and the jury's consideration of mitigating circumstances to those enumerated in the statute. The trial judge's instruction to the jury in this regard tracked the statute. The instruction on mitigating circumstances, when read in conjunction with the express limitation and consideration of aggravating circumstances, advises the jury that the list of statutory mitigating factors is not exhaustive. His contention is without merit. Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981).
Randolph further argues that the trial judge committed error by giving undue weight to the jury's advisory recommendation. He claims that this is apparent because the judge immediately sentenced him to death following the recommendation of the jury. It is true that the trial judge imposed the capital sentence directly following the jury's recommendation. This does not create a presumption that the trial judge failed to apply the facts of the case to the statutory aggravating and mitigating circumstances. It does not appear that the judge made a summary decision. He is not barred from considering and deliberating the aggravating and mitigating circumstances while the jury also deliberates. See King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981).
Randolph claims his double jeopardy rights were violated by his convictions for first-degree murder and attempted robbery. The first-degree murder conviction is supported either under the felony-murder theory or the premeditation theory. Both of these theories were amply discussed during the course of the trial and considered by the jury. Inasmuch as the first-degree murder conviction is supportable under the premeditation theory, then *193 Randolph's judgment and sentence for attempted robbery do not violate his double jeopardy rights. Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).
We also reject Randolph's contention that the capital sentencing statute is unconstitutional on its face and as applied. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); Menendez v. State, 368 So.2d 1278 (Fla. 1979).
The trial judge found death to be the appropriate sentence because any possible mitigating circumstances were outweighed by the aggravating circumstances that the murder was (1) committed while engaged in the commission of robbery, (2) committed for pecuniary gain, and (3) especially heinous, atrocious, or cruel. The finding listing the aggravating circumstance of murder while engaged in the crime of robbery and the finding which includes the aggravating circumstance of murder for pecuniary gain are overlapping and constitute only one aggravating factor. Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). The finding that the murder was heinous, atrocious, or cruel as an aggravating circumstance cannot be supported by the evidence in this case. See, e.g., Fleming v. State, 374 So.2d 954, 958-59 (Fla. 1979); Kampff v. State, 371 So.2d 1007 (Fla. 1979); Lewis v. State, 377 So.2d 640, 646 (Fla. 1980); Riley v. State, 366 So.2d 19, 21 (Fla. 1978); Cooper v. State, 336 So.2d 1133, 1141 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). This leaves only one aggravating circumstance for consideration in imposing an appropriate sentence upon Randolph.
We conclude that Randolph is entitled to a reconsideration of his sentence in light of our determination that only one valid aggravating circumstance was present in this case rather than the aggravating circumstances found by the trial judge. One valid aggravating circumstance may be sufficient to support a death sentence in the absence of at least one overriding mitigating circumstance. State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Dixon, however, went on to stress that the capital sentencing procedure
is not a mere counting process of X number of aggravating circumstances and number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present.
Id. at 10.
In the present case the trial judge considered two statutory mitigating circumstances  Randolph's age (24) and his possible impaired capacity to appreciate the criminality of his conduct due to his use of heroin on the evening of the murder. The trial judge went on to find that these possible mitigating circumstances were far outweighed by the aggravating circumstances and that death was the appropriate sentence. We cannot know whether this "reasoned judgment" would have been different if the trial judge had considered only one instead of three aggravating circumstances before imposing the death penalty. See Menendez v. State, 368 So.2d 1278, 1282 (Fla. 1979). Cf. Brown v. State, 381 So.2d 690, 696 (Fla. 1980), cert. denied, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981) (imposition of death sentence not affected by the consideration of improper aggravating circumstances where at least two valid aggravating circumstances remain to be weighed against one "tenuous" mitigating circumstance).
This Court's role in reviewing death cases is that of sentence review, not sentence imposition. Brown v. Wainwright, 392 So.2d 1327, 1331 (Fla.), cert. denied, 454 U.S. 1000, 102 S.Ct. 542, 70 *194 L.Ed.2d 407 (1981). In Mikenas v. State, 367 So.2d 606 (Fla. 1978), we discussed our role and that of the trial judge in capital sentencing as follows:
In capital cases, it is this court's responsibility to insure that the trial judge remains faithful to the dictates of Section 921.141, Florida Statutes in the sentencing process. It is not the function of this court to cull through what has been listed as aggravating and mitigating circumstances in the trial court's order, determine which are proper for consideration and which are not, and then impose the proper sentence. In accordance with the statute, the culling process must be done by the trial court.
Id. at 610. This is not to say that this Court cannot and should not affirm a sentence of death after striking an aggravating factor. We have held many times that when there are no mitigating circumstances it is proper to affirm a death penalty even though aggravating factors were improperly found. E.g., Middleton v. State, 426 So.2d 548 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 3573, 77 L.Ed.2d 1413 (1983). We have even found it proper to affirm when the only aggravating factor is robbery-murder. Armstrong v. State, 399 So.2d 953 (Fla. 1981). In Armstrong, however, there were two homicides committed in the home of the victim, which is more egregious than this case. In any event in this case we are not so certain that with the elimination of the improperly found aggravating circumstances the penalty would be death.
Accordingly, we remand this case to the trial judge with instructions to resentence Randolph after considering the one valid aggravating circumstance and whatever statutory and nonstatutory mitigating circumstances that may exist. The judgments and sentences are otherwise affirmed.
It is so ordered.
OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in the conviction, but dissents from the sentence with an opinion, in which BOYD, C.J. and ALDERMAN, J., concur.
ADKINS, Justice, concurring and dissenting.
This Court previously rendered an opinion affirming the conviction and sentence in this case. The Court granted a rehearing and is now issueing a decision affirming the conviction but reversing the sentence. I concur in that portion of the opinion which affirms the conviction but dissent with the portion reversing the sentence.
In seeking a rehearing of the opinion relating to the sentence the petition, in effect, "reargued the merits of the Court's order". This is prohibited by Florida Rules of Appellate Procedure 9.330(A).
In this case the attorneys for the defendant used the petition for rehearing as a vehicle through which counsel could advise the Court that they disagree with its conclusion and wanted to reargue matters already discussed in previous briefs and oral arguments. Everything in the petition rehearing was necessarily considered by this Court in its original opinion. By granting this rehearing we have ignored the doctrine announced in State ex rel. Jaytex Realty Co. v. Green, 105 So.2d 817 (Fla. 1st DCA 1958), cert. discharged, 112 So.2d 571 (Fla. 1959).
Our function in reviewing a death sentence is set forth in Hargrave v. State, 366 So.2d 1, 5 (Fla. 1978):
[T]his Court's role is not and should not be to cast aside that careful deliberation which the matter of sentence has already received by the jury and the trial judge, unless there has been a material departure by either of them from their proper functions prescribed by Section 921.141, Florida Statutes (1975), or unless it appears that in view of other decisions concerning imposition of the death penalty the punishment is too great.
(Citation omitted.)
In our original opinion we said:
*195 In the case sub judice the jury recommended death. The trial judge erroneously considered certain circumstances as aggravating, but this error did not impair the process of weighing the aggravating against the mitigating circumstances because there were no mitigating circumstances to weigh. The killing took place in the course of a robbery. The trial court's improper consideration of the two aggravating circumstances concerning pecuniary gain and heinous and atrocious does not render the sentence invalid. See Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964 [101 S.Ct. 2036, 68 L.Ed.2d 342] (1981).
As stated in Armstrong v. State, 399 So.2d 953, 963 (Fla. 1981):
The jury here recommended death. The trial judge erroneously considered certain circumstances as aggravating. The error did not impair the process of weighing the aggravating against the mitigating circumstances because there were no mitigating circumstances to weigh. The killings took place in the course of a robbery. Death is the appropriate punishment. The sentences of death are affirmed.
The jury recommended the death sentence and the judge, in his findings of fact, said:
Turning now to any possible mitigating circumstances, the defendant is a relatively young man at age twenty-four. However, he reached his majority six years ago  long enough to mature and become a productive and respectable member of society rather than a pimp living off his woman.
The evidence did show that the defendant had at least one dose of heroin earlier in the evening of the night the victim was shot. This might possibly have impaired his capacity to appreciate the criminality of his conduct. Certainly the direct testimony concerning his conduct before and after the shooting belies this.
After having given full consideration to all evidence heard by the Court, and considering the advisory sentence rendered by the jury, the undersigned is of the firm opinion that the aggravating circumstances far outweigh any possible mitigating circumstances and that the death sentence imposed upon the defendant, Tommie L. Randolph is justified and required.
The matter of the sentence has already been weighed by the jury and the trial judge and there has been no material departure by either of them from their proper functions prescribed by section 921.141, Florida Statutes.
The majority seems to hold that persons should not be sentenced to death upon one aggravating circumstance. In Gardner v. State, 313 So.2d 675 (Fla. 1975), it appeared that there were at least 100 bruises upon the head, eyes, nose, abdomen, arms, both breasts, chest, back, thighs and legs of the victim. Patches of healthy hair were pulled from her head. There was a massive hemorrhage of the pubic area, including the inner surfaces of the thighs and the inner labia of the vulva. There were large tears inside the vagina from the outside entrance all the way to the back as far as it could go, caused by a broomstick, bat or bottle. The only aggravating circumstance in Gardner was the heinous, atrocious, and cruel manner in which death was inflicted. Under the facts of that case, we properly held that the death sentence was appropriate, even though based upon one aggravating circumstance.
In view of other decisions concerning the imposition of the death penalty, the punishment of death in this case is not too great. The findings and support of the sentence of death contain the following:
The Defendant, Tommie L. Randolph, is a pimp and admitted user of heroin living off the earnings of his paramour, an admitted prostitute. She also is a heroin user and until she entered a plea of no contest to murder in the second degree, was a co-defendant with Tommie.
The evidence shows a sordid and ruthless scheme whereby when the prostitute, Althea, had finished with the victims, Tommie either alone or with a confederate, *196 would be waiting in ambush to rob the victims of the rest of their money. This briefly gives an indication of the character of the Defendant, Tommie L. Randolph.
In Gibson v. State, 351 So.2d 948 (Fla. 1977), Delores Walker and another young woman picked up two Brazilian seamen and invited them to their house to spend the night. This was at the suggestion of the defendant and another individual who planned to "roll" the seamen. Shortly after midnight the Brazilian seamen got into a car with the defendant and the two women. After they traveled a short distance Walker drove down a dark street and stopped the car. Gibson directed the two men to get out of the car and hand over their money. As one seaman got out of the car offering his money, Gibson shot him twice in the head. Gibson was twenty-eight years of age at the time of the crime. The trial court found that the murder was committed during the commission of an armed robbery, was committed for pecuniary gain, and was especially heinous, atrocious and cruel. This Court held that the trial judge improperly combined the armed robbery with the motive of pecuniary gain. Nevertheless the death sentence was upheld.
In Foster v. State, 369 So.2d 928 (Fla. 1979), two young girls met defendant and the victim at a bar. They knew defendant but the victim was a stranger. The defendant and the girls had planned for one of them to have sex with the victim and make some money. The vehicle was parked in a deserted area and after some conversation concerning compensation the victim and one of the girls began to disrobe. Defendant suddenly began hitting the victim and accusing him of taking advantage of his sister. Defendant then held a knife to the victim's throat and cut his neck, causing it to bleed profusely. The victim was still breathing so defendant took a knife and cut the victim's spine. The girls and defendant then drove off in the victim's Winebago and found the victim's wallet underneath a mattress. They split the money. The jury recommended a death sentence and the trial judge found that the murder was committed while defendant was engaged in the commission of a robbery and that the capital felony was especially heinous and atrocious. In our opinion we said:
Before imposing the death sentence, the trial judge considered three psychiatric reports (with which defendant's attorney was familiar) and found that there were no mitigating circumstances sufficient to overcome the heinous nature of the homicide. The defendant committed the homicide in an effort to fulfill his intentions and complete his desire. i.e., "ripping the victim off." An elderly gentleman had agreed to go out and have some fun, but the price of such activity was his life. Defendant showed no compassion when he cut the victim's throat, beat him, dragged him into the woods, and cut his spine with a knife.
Foster v. State, 369 So.2d 928, 931
I would deny the petition for rehearing because it violates our Rules of Appellate Procedure. However, if we reconsider the sentence, other similar cases in which the death sentence was upheld would lead us to an affirmance of the reasoned judgment of judge and jury in the case before us.
BOYD, C.J., and ALDERMAN, J., concur.