621 So.2d 489 (1993)
In the INTEREST OF J.B., a child.
No. 92-1259.
District Court of Appeal of Florida, Fourth District.
June 23, 1993.
Rehearing and Certification Denied August 5, 1993.
Richard L. Jorandby, Public Defender, Eric M. Cumfer and Ellen Morris, Asst. Public Defenders, West Palm Beach, for appellant J.B.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Dawn S. Wynn, Asst. Atty. Gen., West Palm Beach, for appellee State of Florida.
WARNER, Judge.
Appellant claims that his convictions for resisting an officer and assault on a law enforcement officer should be reversed because the officer in question was not in the lawful execution of a legal duty when he attempted to enter J.B.'s home in response to a 911 call. We disagree and affirm.
A 911 call came into the Indian River County Sheriff's office at about 5:30 on a January afternoon. It was what is known as a "disconnect", meaning that the number was activated but no one spoke or requested any assistance, merely hanging up. The emergency system records the address, and an officer was dispatched to *490 the address. The officer rang the bell at the residence, and J.B. answered the door. The officer did not know J.B. The officer asked if everything were all right, and J.B. responded that it was. He asked why the officer was there, and the officer related that the 911 call had come in. J.B. told him that he had no knowledge of anyone calling. He said that some of his friends were "messing around." The officer asked if J.B.'s mother was home. J.B. told him she was not and then told the officer to get off of his property. J.B. was also turning around to look back in the house as though someone else was there. Having observed a screen off one of the front windows and trash all over the front room, the officer was still concerned. He therefore tried to open the screen door between himself and J.B., but it was locked. J.B. refused when the officer told him to open the door. When the officer reached through the screen to try to open the door, J.B. slammed the door and locked it. The officer told J.B. to open the door because he was now under arrest for obstructing an officer. J.B. again told the officer to get off of his property.
The officer ran to the back of the house where he saw J.B. pick up a stick. The officer entered the sliding glass doors, and when J.B. came towards him with the stick, the officer believing that violence was imminent drew his gun. J.B. refused to drop the stick. Ultimately, when a backup officer arrived, J.B. was arrested and charged with resisting arrest without violence by refusing to allow the officer to investigate a 911 call and with assault on a law enforcement officer. The trial court found him guilty on both charges.
Appellant's claim is that the officer was not in the lawful execution of a legal duty because he was attempting to break into J.B.'s home at the time J.B. closed the door. The state counters that the officer was acting under a legal duty to investigate the 911 call which J.B. was resisting. Whether he was acting lawfully depends on whether a warrantless entry into the home was justified.
This case is analogous to United States v. Barone, 330 F.2d 543 (2d Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964). In Barone, two officers heard screams coming from an apartment building. They went to investigate and knocked on the door of the apartment from which they believed the screams emanated. After a male voice answered, they informed the occupant that they were the police and demanded that the door be opened. Eventually, a woman opened the door, and the officers entered. Another woman was also present, and both denied that they had screamed. The officers heard a toilet flushing as the defendant emerged from a bathroom. They then entered the bathroom and observed what turned out to be counterfeit money floating in the commode.
In determining that the officers were lawfully on the premises, the Second Circuit stated:
The right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers, and derives from the common law. [Citations omitted]. Indeed it is obvious that had the patrolmen been denied entry to the apartment they would have had the right, if not the duty, to gain entry forcibly. See Wayne v. United States, [115 U.S.App. D.C. 234, 318 F.2d 205, 209-214 (D.C. Cir.), cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963).]
Id. at 545. See also Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).
We equate the scream in Barone with the 911 call in the instant case. Both may be calls for help, and it is within the duty and obligation of the police to investigate such calls. The officer in the instant case came upon a home with the front screen out and the living room strewn with paper. The young man at the front door denied that anyone made a 911 call, just as the women in Barone denied that they screamed. In Barone, the court determined that the officers would have been *491 remiss in their duty if they had not continued their search of the apartment to see if anyone was in need of aid. Similarly, under the circumstances of this case, we cannot second guess the officer's concern that other persons might be within the premises needing aid or that a burglary had just taken place, given the screen out on the front window, and the condition of the living room. The reasonableness of the officer's response to an emergency situation is a question of fact for the trial court which we should not disturb absent a clear error.
The 911 technology was invented to provide the public with a means to get emergency assistance rapidly. It is used to report both crimes and injuries requiring immediate assistance. There are a myriad of possibilities in which a 911 call could be made but disconnected prior to information being passed. But the disconnect would not mean the termination of the emergency. If officers fail to investigate such calls, preventable harm may occur. A 911 call is a cry to the authorities for help. And until the investigating officer is reasonably satisfied that no emergency exists, he is within his legal duty to investigate such calls in a manner consistent with their emergency nature.
Affirmed.
DELL and GUNTHER, JJ., concur.