944 So.2d 1054 (2006)
Lawrence REED, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-3373.
District Court of Appeal of Florida, Fourth District.
August 16, 2006.
*1055 Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Lawrence Reed appeals the denial of a motion to suppress. He contends that suppression is warranted because a detective did not corroborate a tip and illegally entered or remained inside a motel room without a warrant or exigent circumstances. We agree that the detective illegally remained in Reed's motel room in violation of the Fourth Amendment, whether or not the tip was sufficiently corroborated. As a result, we reverse on this basis and decline to consider whether the tip was sufficiently corroborated.
Reed was charged by Information with possession of cocaine and unlawful use of driver's license (misdemeanor). He filed a motion to suppress evidence. Reed contended that the facts given to Broward County Sheriff's Office Detective Andrew Cardarelli by a tipster were insufficient to *1056 justify a search because they were not verified, and that Cardarelli illegally entered or remained in his motel room because no exception to the warrant requirement applied under the totality of the circumstances.
The trial court held a hearing on Reed's motion to suppress. Cardarelli testified that on the day in question he was working in the area of Northwest 27th Avenue in Fort Lauderdale when he was flagged down by an unknown man riding a bicycle. Cardarelli indicated that although he did not know the man's identity, he saw him around the neighborhood all the time. The man informed Cardarelli that narcotics activity was taking place in a room at the Rochelle Motel. The man said that a couple of "crackheads" were smoking crack in the room and that the man in the room had stolen his own mother's car, cash, and jewelry. The man did not indicate whether the activity had previously taken place, had just stopped, or was ongoing. The man then accompanied Cardarelli to the motel and pointed out the room in question. Cardarelli testified that he did not get the man's name and that the man did not provide a description of the man in the motel room.
Cardarelli then went to the motel office and verified that a man had rented the room in question, "which had started to validate the story that I was told by the person  by the [man] in the street." Management escorted Cardarelli to the room. Cardarelli knocked and announced, and a woman opened the door. Cardarelli saw a man lying on the bed, advised the woman why he was at the room, and called out "Mr. Reed" a few times without response. Cardarelli was concerned by Reed's unresponsiveness, made entry into the room, and shook Reed a few times while advising him of his status as a law enforcement officer. Reed awoke, and Cardarelli asked to see his ID. Reed provided his driver's license, and Cardarelli discovered that Reed's license was suspended and that he was on felony probation. Cardarelli placed Reed under arrest for possession of a suspended driver's license and violation of probation.
On cross-examination, Cardarelli testified that he did not smell or see any drugs in the room when the woman opened the door. Cardarelli clarified that he was concerned for Reed's safety because "I mean the guy's laying there. He's nonresponsive. I'm there for a drug complaint. We get overdoses all the time." Cardarelli further stated that he did not believe Reed was sleeping because people who are sleeping usually respond in some way to a person yelling at them from ten feet away. Furthermore, Cardarelli stated that he did not leave when Reed awoke because he was conducting an investigation, but that if Reed had asked him to leave he would have been required to leave.
Thereafter, Cardarelli spoke with Reed, who was cooperative and admitted that he did steal his mother's car, cash, and jewelry, and pawned the jewelry to fund a crack-smoking binge. Cardarelli then contacted Reed's mother, who came to the scene, identified her car, and indicated that she did not want to press charges against her son. Then either Reed or his mother gave Cardarelli permission to search the car, where he found a very small amount of crack cocaine in the ashtray.
Following Cardarelli's testimony, defense counsel made the following argument in support of the motion to suppress:
And, in fact, if the officer went up there and smelled drugs coming out of the room, he smelled drugs when he  when the door was opened, or observed drugs when the door was opened, I would say the State's absolutely correct.

*1057 The problem is the officer didn't observe those things, and so, therefore, the information he got was not corroborated by his initial contact with anybody and, therefore, he had no right to any  to any further investigation.
For the State to then rely upon the fact that while there was a man sleeping on a bed in a motel room, that's really not unreasonable to believe that person's sleeping on a bed in a motel room.
And if the officer was truly concerned for the well-being of this individual, then maybe if it was a legitimate concern, not under the guise of gaining access to the room, he could have walked in there. When he learned that the man was fine and was only sleeping, he had no further reason to be in that room and should have left.
Anything after that is well beyond what  what the courts allow. He had no reason to further investigate anything. There was no  no sign of drug activity, no sign of any criminal activity whatsoever. And at that point, the officer's suspicions that were aroused by this anonymous tip, they were silenced, and that's when the officer should have left.
If the Court does determine though that he did have a right to go into the room, did have a right to check on the well-being of this individual, once he did that, the man produced his identification, he was cooperative, he showed that he was the right  rightful renter  or renter of that room, at that point, the officer should have left. To keep going with that investigation, is completely tainted, and this Court should grant our motion.
The trial court then made the following ruling on the record at the conclusion of the suppression hearing:
I find that nothing that Detective Cardarelli did is violative of the U.S. or the Florida Constitutions. I do find that the could have, should have, would have arguments, based on just watching this particular case, I think that if he had not done what he had done as far as  not a sleeping person, but somebody that is either in a stupor or a coma or out of it, he would have been remiss in his duty and been subject himself to further suit or departmental reprimand.
Once again, I find that there is no grounds to suppress the evidence. The motion to suppress is hereby denied.
Subsequently, the trial court entered a written form order denying Reed's motion to suppress. Reed then pleaded nolo contendere to both charges and reserved the right to appeal the trial court's denial of his dispositive motion to suppress. He was adjudicated guilty and sentenced to two years in prison on the cocaine possession count and time served on the suspended driver's license count.
"`The standard of review applicable to a motion to suppress evidence requires that this Court defer to the trial court's factual findings but review legal conclusions de novo.'" Pantin v. State, 872 So.2d 1000, 1002 (Fla. 4th DCA 2004) (citations omitted); see also Fitzpatrick v. State, 900 So.2d 495, 513 (Fla.2005)(same); Murray v. State, 692 So.2d 157, 159 (Fla. 1997)(same).
The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article 1, Section 12 of the Florida Constitution provides similar protection and mandates the following:
This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by *1058 the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
The instant case presents two Fourth Amendment challenges, that to the tip received by Cardarelli and that to Cardarelli's entry and stay in Reed's motel room. Because we find that Cardarelli's stay in Reed's motel room is dispositive of this case, we decline to address the challenge to the tip.
"It is a `basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Anderson v. State, 665 So.2d 281, 283 (Fla. 5th DCA 1995) (citations omitted). "[F]or Fourth Amendment purposes a motel room is considered a private dwelling where the occupant is legally there, has paid for the room, and has not been asked to leave." Gilbert v. State, 789 So.2d 426, 428 (Fla. 4th DCA 2001). However, warrantless searches of homes and motel rooms are not unreasonable "within the framework of a few specifically established and well delineated exceptions." Gnann v. State, 662 So.2d 406, 408 (Fla. 2d DCA 1995); see also Jones v. State, 648 So.2d 669, 674 (Fla.1994)(same). "The state has the burden of showing that a warrantless search comes within one of the recognized exceptions." Gnann, 662 So.2d at 408. The five established exceptions to the warrant requirement are: "(1) consent, (2) incident to a lawful arrest, (3) with probable cause to search but with exigent circumstances, (4) in hot pursuit, and (5) stop and frisk." Id.
The case at bar centers on the exigent circumstances exception. Exigent circumstances are those characterized by "grave emergency," imperativeness for safety, and compelling need for action, as judged by the totality of the circumstances. See Riggs v. State, 918 So.2d 274, 278-279 (Fla.2005). For example, "where safety is threatened and time is of the essence, [the Florida Supreme Court has] recognized that `the need to protect life and to prevent serious bodily injury provides justification for an otherwise invalid entry.'" Id. at 279 (citations omitted); see also Webster v. State, 201 So.2d 789, 792 (Fla. 4th DCA 1967)("The preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties."). Feared medical emergencies are included in the scope of exigent circumstances and permit law enforcement to enter and investigate a home or motel room without a warrant, as long as law enforcement does not "`enter with an accompanying intent either to arrest or search.'" Riggs, 918 So.2d at 280 (citations omitted). Such medical emergencies can include reports of an individual suffering from a drug overdose. See State v. Moses, 480 So.2d 146 (Fla. 2d DCA 1985). Furthermore, the reasonableness of law enforcement's belief that a medical emergency constitutes an exigent circumstance permitting the warrantless entry into a dwelling is measured by "the reasonableness of the police as to the existence of an emergency, not the existence of the emergency in fact." Webster, 201 So.2d at 792; see also Randolph v. State, 463 So.2d 186, 191 (Fla.1984). However, a presumptively-valid warrantless entry based on exigent circumstances is subject to some limitation: "`Moreover, an entry based on an exigency must be limited in scope to its purpose. Thus, an officer may not continue her search once she has determined that no exigency exists.'" Riggs, 918 So.2d at 279 (Fla.2005) (citation omitted).
*1059 We conclude that whether or not Cardarelli's concern for Reed's health was legitimate and supported by the totality of the circumstances known to Cardarelli, once Cardarelli confirmed that Reed had not overdosed, he was required to leave the motel room because the exigency dissipated and no criminal activity was apparent within the room. As such, Cardarelli's stay in Reed's motel room exceeded the scope of the exigent circumstances exception to the warrant requirement and constituted an unreasonable search and seizure violative of the Fourth Amendment. Consequently, the trial court erred by denying Reed's motion to suppress.
In sum, the trial court erred by denying Reed's motion to suppress because Cardarelli remained in his motel room in violation of the Fourth Amendment. Therefore, we reverse and remand for Reed's discharge.
Reversed.
GUNTHER, HAZOURI and MAY, JJ., concur.