DAMOORGIAN, J.
 

 We reverse the trial court’s denial of John Dixon’s motions to suppress because the police entered Dixon’s apartment without consent and without sufficient exigent circumstances to justify a warrantless entry.
 

 
 *922
 
 Dixon was charged with the following crimes: (1) trafficking in cocaine; (2) trafficking in oxycodone; (3) possession of al-prazolam; (4) possession of diazepam; (5) possession of carisoprodol; (6) possession of hydroeodone; (7) possession of cannabis; and (8) possession of drug paraphernalia.
 
 [1]
 
 He filed pre-trial motions to suppress all evidence observed and seized prior to and after the issuance of the search warrant for his apartment. The trial court conducted a hearing on the motions, at which several witnesses testified about the events that led to the charges.
 

 Sergeant Francis Leitman testified that he responded to a call about a home invasion robbery. When he arrived at the scene, he spoke with one of the robbery victims who had already left the location where the crime had occurred. This victim reported that the robbery occurred at Dixon’s apartment and that the robbers had fled. Leitman then walked to Dixon’s apartment and knocked on the door. Dixon answered the door after a minute or two, accompanied by his girlfriend. As Leitman began questioning Dixon about the robbery, he walked into Dixon’s apartment. Leitman did not ask for permission to enter, and Dixon did not object. Leit-man did not have a warrant to search the apartment.
 

 Leitman testified that he entered Dixon’s apartment to make sure everything was all right and to get more information about the robbery. Another officer was also present. Dixon and his girlfriend continued to speak about the robbery. They confirmed that the robbers had already fled the apartment. Leitman observed evidence consistent with the events described to him by the victims. While Leitman was speaking with Dixon’s girlfriend, Dixon walked into his bedroom, closed the door for a minute or two, and then came back out. He appeared to be nervous and agitated and asked Leitman to leave the apartment. Leitman became concerned that there might be a suspect in the apartment, although he did not hear any noises coming from other rooms. He asked Dixon and his girlfriend to step outside. He then searched the kitchen, where they discovered a couple of baggies with white residue and a bottle with some possible cut material for cocaine. Next, he moved into the bedroom and bathroom area, where he saw more white powder on the sink, clear plastic bags in the closet, marijuana, and some money. On the night stand, there was a straw with white residue. Ail of these items were in plain view during the search of the apartment. Leitman did not find the robbery suspects in the apartment.
 

 Dixon’s girlfriend testified that Dixon told the officers everything was fine and he did not want them in his apartment, but the officers ignored him and walked inside. She also testified that the officers told her to stay at the apartment door while they searched. Dixon’s neighbor testified he heard a loud noise and saw two men running down the middle of the driveway. About twenty-five minutes later, he saw several police officers enter Dixon’s apartment and then come out. At some point, the officers brought Dixon and his girlfriend out of the apartment. The neighbor heard Dixon tell the officers that he did not want them to go into his apartment.
 

 After becoming suspicious that someone else was in the apartment, Leitman called a canine officer, who had been dispatched to the apartment to look for possible suspects. The canine officer observed Leit-man outside the apartment talking to Dixon. He heard Dixon tell Leitman that he did not want the officers to search his apartment. The officers ignored Dixon’s
 
 *923
 
 request and entered the apartment. The canine officer testified that Dixon’s actions and behaviors were consistent with him being a victim of an armed robbery, and were not unusual given the circumstances.
 

 Eventually, a search warrant for the apartment was obtained based on information provided by Leitman and the results of field tests done on the narcotics located in Dixon’s apartment. A subsequent search revealed additional drugs and paraphernalia.
 

 At the conclusion of the hearing, the trial court ruled that Leitman had sufficient cause to believe that the robbery suspects were in the apartment based on Dixon’s demeanor, Dixon’s disappearance to the bedroom for a period of time, and the evidence of the robbery inside the apartment. These facts constituted exigent circumstances justifying the warrant-less entry into Dixon’s apartment. Finally, because Leitman observed drugs and paraphernalia in plain view during the initial search for robbery suspects, the officers had probable cause to obtain the search warrant and conduct a further search of the apartment. Following the trial court’s ruling on his motions to suppress, Dixon pled no contest to the six remaining counts and reserved his right to appeal the court’s ruling on the motions.
 

 Dixon argues that the trial court erred in denying his motions to suppress because he did not consent to the search of his apartment and there were no exigent circumstances justifying the warrantless search. The State responds that Dixon did not protest the officers’ entry into his apartment, and once inside, exigent circumstances developed which justified the officers’ search for additional people in the apartment. The drugs and paraphernalia were discovered in plain view during this search.
 

 In reviewing an order on a motion to suppress, an appellate court should defer to the trial court’s factual findings but review de novo the application of the law to the facts.
 
 Reed v. State,
 
 944 So.2d 1054, 1057 (Fla. 4th DCA 2006) (quoting
 
 Pantin v. State,
 
 872 So.2d 1000, 1002 (Fla. 4th DCA 2004)).
 

 “[T]he highest level of Fourth Amendment protection lies at the entrance of one’s home (or apartment).”
 
 Cote v. State,
 
 14 So.3d 1137, 1139 (Fla. 4th DCA 2009). A warrantless search of a home is per se unreasonable and in violation of the Fourth Amendment.
 
 Seibert v. State,
 
 923 So.2d 460, 468 (Fla.2006). However, a warrantless search may be legal if the State proves consent or exigent circumstances.
 
 Reed,
 
 944 So.2d at 1058.
 

 The State argues that Sergeant Leitman had implied consent to enter the apartment because Dixon opened the door and did not protest when Leitman followed him into the apartment. This argument is without merit. Dixon’s failure to protest Leitman’s entry into his apartment did not constitute consent to enter. “[T]he government may not show consent to enter from the defendant’s failure to object to the entry. To do so would be to justify entry by consent and consent by entry. ‘This will not do.’ ”
 
 United States v. Shaibu,
 
 920 F.2d 1423, 1427-28 (9th Cir.1990) (quoting
 
 Johnson v. United States,
 
 333 U.S. 10, 17, 68 S.Ct. 367, 92 L.Ed. 436 (1948));
 
 see also Phuagnong v. State,
 
 714 So.2d 527, 531 (Fla. 1st DCA 1998) (“A positive response to a request to talk does not constitute consent to enter a citizen’s home.”).
 

 The State did not meet its burden of proving consent; thus, Leitman’s entry was legal only if exigent circumstances existed at the time he entered the apartment. “Exigent circumstances are those characterized by ‘grave emergency,’ imperativeness for safety, and compelling
 
 *924
 
 need for action, as judged by the totality of the circumstances.”
 
 Reed,
 
 944 So.2d at 1058. An immediate need for police assistance to protect life or substantial property interests can constitute an exigent circumstance.
 
 Seibert,
 
 923 So.2d at 468. In addition, “[e]xigent circumstances have been determined to exist when 911 calls were received, even in cases when the callers did not identify a life-threatening emergency, when the officers arrived at the source of the 911 call to find suspicious circumstances at the residence.”
 
 Id.
 
 at 469. The focus of the inquiry is the reasonableness of the officer’s belief that an emergency existed at the time of entry.
 
 Id.
 
 at 468. A key ingredient of the exigency requirement is that the police lack time to secure a search warrant.
 
 Riggs v. State,
 
 918 So.2d 274, 279 (Fla.2005).
 

 Leitman certainly had a duty to investigate the 911 call until he was reasonably satisfied that no emergency existed or that a once-urgent situation was no longer urgent.
 
 See In re J.B.,
 
 621 So.2d 489, 490-91 (Fla. 4th DCA 1993). In order to justify a warrantless entry and search of Dixon’s apartment, however, the State was required to prove that exigent circumstances existed which required entry into the apartment immediately without a warrant.
 
 See Reed,
 
 944 So.2d at 1058. Based on the testimony at the suppression hearing, such exigent circumstances did not exist.
 

 When Leitman first arrived at Dixon’s apartment, before he entered, Dixon and his girlfriend informed him that the robbers had already left the apartment. The third victim confirmed that the robbers were no longer in the apartment and that he had been able to flee as soon as the robbers left. Leitman did not observe evidence of an ongoing burglary when he arrived at the apartment, which might have required immediate entry without a warrant. Furthermore, he did not testify that he was concerned there could be other victims of the robbery inside the apartment who needed immediate assistance.
 

 Most importantly, Leitman did not testify that he suspected the robbery suspects were in the apartment as soon as he reached the apartment door. He became suspicious only after he entered the apartment without consent, saw evidence of the robbery, and observed Dixon nervous and agitated after disappearing to another room. These observations do not support Leitman’s warrantless entry into the apartment prior to making the observations.
 

 We conclude that the exigency dissipated once Leitman received the initial description of the robbery from the victim who was out of harm’s way, and, thereafter, from his conversation with Dixon and his girlfriend at the apartment door. Accordingly, Leitman’s search of Dixon’s apartment leading to his discovery of evidence of criminal conduct constituted an unreasonable search and seizure. All physical evidence derived from the Leit-man’s initial unlawful search, including evidence discovered after the officers acquired a search warrant, should have been suppressed. Accordingly, we reverse the order denying Dixon’s motions to suppress, vacate Dixon’s convictions, and remand for further proceedings consistent with this opinion.
 

 Reversed and Remanded.
 

 FARMER and HAZOURI, JJ., concur.
 

 [1]
 

 . The State voluntarily dismissed counts 2 and 6.