GERBER, J.
The defendant appeals the circuit court’s order denying his motion to suppress, which led to his no contest plea for being a felon in possession of ammunition. He argues that the circuit court erred in finding that the “community caretaking exception” excused the police’s warrantless entry into his bedroom where they found the ammunition. We agree with the defendant and reverse.
The circuit court’s order included the following factual findings. Two detectives arrested the defendant at his house on an active warrant. His minor son was there at the time. The defendant agreed that while another officer took him to jail, the detectives could wait in his living room until his sister came to take custody of his son. When the sister arrived, she did not have keys to lock the house. The detectives were concerned about leaving the house unlocked. One detective said, “Let’s look around and see if we can find keys.” The detectives then searched for the keys along with the defendant’s sister. The detective who suggested searching for the keys entered the open door of the defendant’s bedroom. He found the keys on top of a dresser. Next to the keys was one round of ammunition. The detective testified that he was not able to see the items on the dresser without entering the bedroom.
Based on those factual findings, the circuit court denied the motion to suppress. The court reasoned:
Under the “community caretaking exception” to the warrant requirement, the detectives properly entered into the bedroom. The detectives had a valid concern that the house could be broken into if they left the unattended house unlocked. Therefore, applying an overall standard of reasonableness, this court finds that the detectives acted properly and within their rights when finding the ammunition.
After the court’s denial of his motion to suppress, the defendant pled no contest to being a felon in possession of ammunition. The court signed the plea form acknowledging the defendant’s reservation of his right to appeal the dispositive motion to suppress. During the plea colloquy, the court also acknowledged the defendant’s reservation of his right to appeal the dis-positive motion to suppress. This appeal followed.
As an initial matter, the state argues that the defendant did not preserve the suppression issue for appeal. We disagree. “Florida Rule of Appellate Procedure 9.140(b)(2)(A)(i) permits a defendant to appeal from a guilty or nolo contendere plea when the defendant ‘expressly reserve^] the right to appeal a prior disposi-tive order of the lower tribunal, identifying with particularity the point of law being reserved.’ ” Diaz v. State, 34 So.3d 797, 801 (Fla. 4th DCA 2010). Moreover, *1123 “where a motion tests the suppression of contraband which the defendant is charged with possessing, the motion is usually considered dispositive in the case.” Id. (citation and internal quotations omitted).
Turning to the merits, the defendant argues that the circuit court erred in finding that the “community caretaking exception” excused the detective’s warrant-less entry into the bedroom where he found the ammunition. Our review is de novo. See Peraza v. State, 69 So.3d 338, 340 (Fla. 4th DCA 2011) (on review of a trial court’s decision on a motion to suppress, “An appellate court is bound by the trial court’s findings of historical fact if those findings are supported by competent, substantial evidence. However, a de novo standard applies to questions of law.”) (citation and internal quotations omitted).
We agree with the defendant’s argument. “Searches undertaken by a law enforcement officer in fulfilling his or her community caretaking functions focus on ‘concern for the safety of the general public.’ ” Ortiz v. State, 24 So.3d 596, 600 (Fla. 5th DCA 2009) (quoting Cady v. Dombrowski, 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). Thus, a warrantless search may be justified by exigent circumstances, which are “those characterized by ‘grave emergency,’ im-perativeness for safety, and compelling need for action, as judged by the totality of the circumstances.” Reed v. State, 944 So.2d 1054, 1058 (Fla. 4th DCA 2006) (citing Riggs v. State, 918 So.2d 274, 278-79 (Fla.2005)). However, “ ‘an entry based on an exigency must be limited in scope to its purpose. Thus, an officer may not continue her search once she has determined that no exigency exists.’ ” Reed, 944 So.2d at 1058 (quoting Riggs, 918 So.2d at 279) (other citation omitted).
Here, once the defendant’s sister arrived, no exigency existed which justified the detective’s warrantless entry into the defendant’s bedroom. The sister was capable of entering the bedroom to search for the keys. Even if the detectives wanted to assist the sister in finding the keys, they should have limited their search to the visible area of the house in which the defendant permitted them to enter, and directed the sister to search the non-visible areas of the house, including the bedroom.
The case with the closest facts supports our conclusion. In United States v. McGough, 412 F.3d 1232 (11th Cir.2005), the defendant locked his five-year-old daughter in his apartment and left temporarily. The daughter called 911. When the police arrived at the apartment, they saw the daughter locked inside. The defendant returned and unlocked the door. The police then arrested the defendant for reckless conduct. The police called the daughter’s aunt, who said that she would come over. While waiting for the aunt to arrive, the police asked the defendant for permission to enter his apartment. He refused. The police then noticed that the daughter was not wearing shoes. The police asked her to go inside to get shoes, but she was too scared. Either before or at the time when the aunt arrived, the police took the daughter into a back bedroom to get shoes. In that room, the officers saw a bag of marijuana and a firearm sitting on top of a bar. The officers left the apartment to obtain a search warrant. After obtaining the warrant and re-entering the apartment, the officers discovered large amounts of marijuana, various firearms, and large amounts of cash. The police charged the defendant with being a felon in possession of a firearm, possession of marijuana, and using and carrying a firearm during a drug trafficking crime. The defendant filed a motion to suppress, arguing that the officers had no legal authority to enter his apartment. The trial court denied the motion.
*1124 On appeal, the defendant contended there was no urgent need for the police to enter his apartment to get his daughter’s shoes because the aunt could have done so when she arrived. The government argued that the police entered the apartment while acting in their community caretaking function. The appellate court concluded that the facts did not justify applying the community caretaking exception:
[The police] had the situation under control before they entered [the defendant’s] apartment. [The defendant] was under arrest and in custody in the police cruiser, and [the daughter] was safely outside. There was no immediate threat ... that necessitated the officers’ war-rantless entry into [the defendant’s] apartment. Nor were there any exigent circumstances ... that would have justified the officers’ decision to enter [the defendant’s] home.
[[Image here]]
In this case, the exigencies of the situation — -[the daughter’s] need for her shoes — are not compelling enough to find that the officers’ warrantless entry into [the defendant’s] apartment was objectively reasonable. Were we to apply the community caretaking exception to the Fourth Amendment in this case, we would undermine the Amendment’s most fundamental premise: searches inside the home, without a warrant, are presumptively unreasonable.
McGough, 412 F.3d at 1239 (citing Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).
As in McGough, the facts here do not justify applying the community caretaking exception. The exigencies of the situation — finding keys to lock the defendant’s house — are not compelling enough to find that the detective’s warrantless entry into the bedroom was objectively reasonable. The detectives simply could have directed the defendant’s sister to enter the bedroom to search for the keys. The detectives also could have requested the officer transporting the defendant to ask him where the keys were located and then relayed that information to his sister. The detective did not have to enter the defendant’s bedroom.
The eases upon which the state primarily relies, Castella v. State, 959 So.2d 1285 (Fla. 4th DCA 2007), and Cobb v. State, 378 So.2d 82 (Fla. 3d DCA 1980), are distinguishable. See Castella, 959 So.2d at 1292 (“[U]nder the community caretaking doctrine, the deputies were justified in stopping [the defendant’s] boat in order to obtain any information they could about the accident, its location, and its aftermath in order both to rescue the injured and to protect the general public from dangers resulting from the damaged vessel, such as the potential for explosion, debris, and impediment to travel on the [I]ntracoastal.”); Cobb, 378 So.2d at 83 (“It is undisputed ... that the officer opened the [car] door, not in order to search the car or even to look into it, but rather only in the process of securing the vehicle against theft, vandals and the elements during the time that it was to be left unattended on the public streets while [the defendant] was in jail”; no mention of another person who could have secured the vehicle on the defendant’s behalf).
Based on the foregoing, the circuit court erred by denying the defendant’s motion to suppress. We reverse and remand with directions for the trial court to vacate the defendant’s conviction and sentence, grant the defendant’s motion to suppress, and permit the defendant to withdraw his plea.

Reversed and remanded.

TAYLOR and LEVINE, JJ., concur.