VILLANTI, Judge.
Brandon Wade Fields seeks review of his convictions and sentences for two counts of possession of a controlled substance and one count of possession of less than 20 grams of cannabis, contending that the trial court erred by denying his dispos-itive motion to suppress. Because the officer searched Fields without consent and after any concerns about a “feared medical emergency” had dissipated, the search was illegal, and we reverse and remand for discharge.
On January 30, 2011, police were called to Fields’ residence by Fields’ mother. She requested a dispatch after she found Fields “in his room nude and with a mixture of pills and syringes,” and she indicated that Fields appeared to have been “beaten up.” Fields’ mother also told the dispatcher that Fields was “agitated,” that he had a history of drug abuse, and that he was on medication for bipolar disorder. She also reported that Fields had been involuntarily committed in the past.
Deputies, including Deputy Odom, responded to Fields’ house. Odom intended to evaluate Fields for mental illness and/or substance abuse to determine whether commitment under either the Baker Act[1] or Marchman Act[2] was warranted. However, when Odom arrived at the house, Fields was standing outside under an oak tree, fully clothed. Odom approached Fields and began speaking with him. While they were talking, Fields was not aggressive or agitated, and he was able to answer Odom’s questions and engage in an appropriate and coherent conversation.
Early in this conversation, Odom noticed the top of a pill bottle sticking up from Fields’ pocket, and he asked Fields what was in the bottle. Fields replied that it *1282 was his blood pressure medication, and he gave Odom the name Lisinopril. Odom did not ask to see the bottle at that time. Instead, he began talking to Fields about whether he had been taking drugs and whether he had been hearing voices. As they continued speaking, Odom began telling Fields in detail about voluntary drug treatment programs, including the ACTS program. At that point, Odom and Fields were joined by Deputy Melton, who also, told Fields about the benefits of voluntary admission into ACTS.
According to Odom, part of his March-man Act assessment included determining whether the subject’s drug use had caused prior “legal ramifications.” So as he was explaining the voluntary ACTS program to Fields, Odom asked whether Fields had ever been in any legal trouble. Fields responded that he had been in trouble with the law in the past. Odom asked, “For what?” Fields responded, “Drug trafficking.” Odom then immediately said, “Okay. Let me see the pill bottle in your cargo pocket.” In compliance with this command, Fields handed Odom the bottle. The bottle contained controlled substances, and Fields was arrested and charged with their possession.
Fields moved to suppress the drugs, arguing that they were seized without his consent during an illegal detention. The State argued that the search was legal because the officers were responding to a feared medical emergency. Fields then argued that any fears concerning a possible medical emergency had dissipated before Odom demanded the bottle. The trial court recognized that the pivotal question in this circumstance was whether “the conduct of the officer remain[ed] consistent with an inquiry as to mental health or did it ever transform into a criminal investigation.” The court then concluded that Odom’s request to see the pill bottle “was part of a mental health assessment and that the officer had a right to make that request.” Accordingly, the trial court denied the motion to suppress. Fields then pleaded guilty to the charges while reserving his right to appeal the denial of his dispositive motion to suppress. He now appeals the resulting judgment and sentence, contending that the trial court erred in denying the motion to suppress.
In Riggs v. State, 918 So.2d 274, 279 (Fla.2005), the supreme court recognized that a “feared medical emergency” is a particular type of exigent circumstance that may support a warrantless search. The court explained that “ ‘the “emergency exception” permits police to enter and investigate private premises to preserve life ... or render first aid, provided they do not enter with an accompanying intent either to arrest or search.’ ” Id. at 280 (quoting Hornblower v. State, 351 So.2d 716, 718 (Fla.1977)). However, any search “based on an exigency must be limited in scope to its purpose” and “an officer may not continue her search once she has determined that no exigency exists.” Rolling v. State, 695 So.2d 278, 293 (Fla.1997).
For example, in Reed v. State, 944 So.2d 1054, 1056 (Fla. 4th DCA 2006), officers received a report of possible drug dealing from a motel room. When an officer went to the room, a woman opened the door and the officer could see a man lying on the bed. Id. When he tried to rouse the man, the man was unresponsive. Id. Fearing a possible drug overdose, the officer entered the room and attempted to wake him. Id. Once the man — Reed—woke up and was apparently okay, the officer asked for his driver’s license. After determining that Reed’s license was suspended and that he was on felony probation, the officer arrested him and charged him with possession of a suspended driver’s license and violation *1283 of probation. Id. A subsequent search of the room found cocaine.
Reed subsequently moved to suppress the evidence against him, arguing that the officer should not have entered the room. The trial court denied the motion, and Reed appealed. On appeal, the Fourth District noted that that the officer’s initial entry into the room was permissible under the “feared medical emergency” exception because the officers were at the room on a drug complaint, Reed would not originally wake up, and the officer feared an overdose. However, once the officer determined that Reed had not overdosed, “he was required to leave the motel room because the exigency dissipated and no criminal activity was apparent within the room.” Id. at 1059. Therefore, the Fourth District concluded that the search after Reed woke up was improper and that the court should have granted the motion to suppress.
While the majority of cases applying the “feared medical emergency” exception have, like Reed, dealt with warrantless entries into residences, this court and others have also applied the exception to searches of persons or their clothing. In State v. Hutchins, 636 So.2d 552 (Fla. 2d DCA 1994), an officer was flagged down by a woman who said she had been beaten. Her alleged assailant — Hutchins—was on the street corner unable to stand and somewhat incoherent. Id. at 552-53. The woman told the officer that Hutchins had been drinking and had taken four or five pills, but she did not know what they were. Id. at 553. Concerned for Hutchins’ welfare, the officer called for paramedics. Id. Once Hutchins was in the ambulance, the officer asked what pills he had taken, and Hutchins responded that they were in his pocket. Id. The officer then reached into the pocket, pulled out the bottle, and discovered that they were Xanax. Id. Hutch-ins was subsequently arrested for possession of that substance.
Hutchins moved to suppress the drugs, arguing that the officer’s taking of the pill bottle constituted an illegal search. The trial court granted the motion, and the State appealed. This court held that the search of Hutchins’ pockets under these circumstances was reasonable because the officer “believed [the search] in good faith to be reasonably necessary to assist [Hutchins] in a potentially life-threatening situation.” Id. Therefore, this court reversed the order suppressing the drugs.
Similarly, in Gilbert v. State, 289 So.2d 475, 475 (Fla. 1st DCA 1974), officers found Gilbert wandering in the middle of a major road. She appeared to be intoxicated, and she was disoriented and disheveled. Id. She told officers that she had been assaulted, and they took her to the police station to investigate her allegations. Id. While at the police station, Gilbert became increasingly upset and agitated, and she made several statements indicad ing that she wanted to kill herself. Id. Officers became increasingly concerned about her health and welfare, and one of the officers searched Gilbert’s jacket to ensure that there was nothing in it with which she could harm herself. Id. at 476. In doing so, the officer found a pill bottle containing hashish. Gilbert was arrested for possession of the hashish, and she moved to suppress the drugs. The trial court denied the motion, and Gilbert appealed.
The First District affirmed. It noted that the police were not looking for evidence of a crime when they searched Gilbert’s pockets. Instead, they were looking for “possible harmful instruments or substances which could be utilized by her to effect her wish to be dead or kill herself.” Id. The court noted that the totality of the facts “provided sufficient cause for the police officers to reach such a level of con *1284 cern over appellant’s safety so as to dictate a search of the jacket.” Id.
In this case, there is no dispute that Odom originally responded to Fields’ house due to a feared medical emergency. Based on the reports from Fields’ mother, Odom detained Fields to question him concerning his mental status and physical condition. However, Odom’s investigation revealed a fully clothed adult male who was standing outside smoking a cigarette. Contrary to the facts reported to Odom by dispatch, Fields was neither agitated nor aggressive, and he was able to engage in a lengthy coherent conversation with Odom. When Odom initially asked Fields what was in the pill bottle and Fields told him it was blood pressure medication, Odom was apparently not concerned. Instead, only after Odom began discussing possible voluntary drug treatment programs and only after Fields indicated that he had a prior conviction for drug trafficking did Odom decide he needed to see what was in the pill bottle, and only then did he order Fields to hand over the bottle.
In denying Fields’ motion to suppress, the trial court apparently concluded that the timing of Odom’s request was coincidental. However, contrary to this conclusion, this undisputed sequence of events establishes that Odom was no longer concerned with any feared exigent medical emergency when he demanded that Fields hand him the pill bottle. Unlike in Hutch-ins, the totality of the circumstances in this case did not show that Odom was attempting to address any ongoing medical emergency that Fields was experiencing. And unlike in Gilbert, the totality of the circumstances did not show that Odom was attempting to prevent Fields from harming himself. There was no testimony that Fields appeared to be under the influence of any drugs when Odom arrived, and nothing that Odom saw or testified to corroborated Fields’ mother’s initial report that Fields was agitated and beaten up. Further, the evidence does not support a conclusion that Odom was still investigating potential involuntary commitment because Odom was discussing voluntary drug treatment programs just prior to asking Fields about his prior legal problems. Thus, like the officer in Reed, while Odom initially responded to address a feared medical emergency, by the time Odom demanded the pill bottle from Fields, any exigency had clearly dissipated. Accordingly, since the reason for the feared medical emergency had been resolved, Odom was not entitled to demand that Fields produce the pill bottle. See Rolling, 695 So.2d at 293 (holding that “an officer may not continue her search once she has determined that no exigency exists”); Reed, 944 So.2d at 1059 (requiring the officer to end any search efforts once the exigency that allowed the initial entry has dissipated). Hence, Odom’s demand constituted an unreasonable and unconstitutional search, the trial court should have granted Fields’ motion to suppress, and we must reverse the denial of that dispositive motion and remand for discharge.
Reversed and remanded for discharge.
SILBERMAN, C.J., Concurs.
KELLY, J., Concurs in result only.

. §§ 394.451-.4789, Fla. Stat. (2010).

. § 397.301 et seq., Fla. Stat. (2010).