DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LUDERS CROISSY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-4092

[January 20, 2016]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Robert E. Belanger, Judge; L.T. Case No. 562013CF002358A.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Allen R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his convictions and sentences for tampering with evidence, possession of methamphetamine, possession with intent to sell cannabis over twenty grams, and use or possession of drug paraphernalia. He argues the trial court erred in denying his motion to suppress. We agree and reverse.

The defendant moved to suppress "methamphetamine, and any other evidence, physical or testimonial, including statements of the [d]efendant, as being illegally seized without a warrant." The court denied the motion to suppress, and the defendant entered a no contest plea to tampering with evidence, possession of methamphetamine, possession with intent to sell cannabis over twenty grams, and use or possession of drug paraphernalia. The State nolle prossed the count for possession of a firearm or ammunition by a convicted felon. The following testimony was elicited during the motion to suppress.

The arresting officer testified that he received a BOLO from another

officer who was attempting to pull over a vehicle on Rosser Boulevard, after witnessing the vehicle speeding. The BOLO advised that the vehicle had pulled over on the side of Rosser Boulevard and Haylake Avenue, and provided a "vague description of two black males" exiting the vehicle. It gave no other physical or clothing description.

When the officer responded to the scene, he observed the described vehicle on the southwest corner of the intersection of Rosser and Haylake, facing the woods, with both the driver's side and passenger's side doors open and no one inside. Within a minute or two of receiving the BOLO, the officer traveled down Haylake, made a left turn onto Cohutta Street, and immediately saw a black male standing in the center of the road, approximately one block or three-hundred yards from the abandoned vehicle.

The officer pulled his vehicle up to the defendant, exited, and made contact to determine if the defendant had any knowledge of what happened with the abandoned vehicle. He asked the defendant for his name, and immediately noticed that the defendant was sweating profusely and was extremely out of breath. According to the officer, the defendant looked very suspicious because he was standing in the middle of the road trying to talk to a resident.

The officer asked the defendant where he was going and where he had been. The defendant responded that he was walking home from Dreyfuss Lake. The officer asked the defendant to hold on and went to speak with the resident. The defendant was not wearing any type of athletic gear. It seemed odd to the officer that the defendant was out of breath while standing in the middle of the road.

The officer asked the resident if she knew the defendant. She told the officer that she saw the defendant walking down the street and he started to talk to her. She did not know him. The officer's suspicions increased after speaking with the resident so he requested back-up. The defendant then told the officer that he lived on Rosser Boulevard. He explained he was hanging out at Dreyfuss Lake and was walking home. He did not tell the officer what he was doing, who he was with, or any other information.

Dreyfuss Lake was approximately one mile to one-and-a-half miles from where they were located. The officer surmised that if the defendant was walking from Dreyfuss Lake to his home on Rosser Boulevard, there would be no reason for him to be on Cohutta. This fact also piqued the officer's interest.

The officer then handcuffed the defendant for his safety and that of the defendant so he could check for weapons. He told the defendant he was not under arrest, but that he was placing him in handcuffs to detain him until back-up arrived.

After handcuffing the defendant, the officer checked his pockets for weapons. He removed the defendant's cell phone and some type of cigarette wrapper and placed them on the hood of his vehicle while they waited for back-up. When the back-up officer arrived, the arresting officer spoke to the resident again. She advised that just minutes before the defendant walked up, she saw another black male walking down the road holding a child.

While speaking with the resident, the officer observed the defendant fidgeting and reaching to grab his cell phone, which was ringing constantly. The officer walked back to his car and saw the defendant stomping on something in the road. He looked down and observed a bag containing a pinkish white rock on the ground by the defendant's feet. The officer testified the bag was not on the ground when he first made contact with the defendant. The substance field tested positive for methamphetamine. The officer placed the defendant in the back-up officer's car. When others searched the abandoned vehicle, they found more drugs matching the substance and color of the rock the officer found near the defendant's feet.

On cross-examination, the officer admitted he never saw the abandoned vehicle being driven. He admitted he spoke to the defendant only because he was a black male, who matched the BOLO's limited description. He admitted it was a warm afternoon. After his suspicion was aroused by his conversation with the resident, he thought he had reasonable suspicion for a *Terry*[1] stop.

The officer did not know whether the defendant was armed, but he did have a bulge in his pocket. The bulge was the defendant's large Galaxy droid type phone, which was not in the shape of a firearm. While the officer indicated he did not search the defendant, but merely patted him down for weapons, he admitted removing the defendant's cell phone from his pocket.

Defense counsel argued there was no reasonable suspicion to detain the defendant. Alternatively, he argued that even if reasonable suspicion existed to detain the defendant, there was no reasonable suspicion the

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

defendant was armed. The officer's removal of the defendant's phone exceeded a pat-down and became an illegal search.

The trial court denied the motion to suppress. The court found: "The officer actually stopped because the defendant was standing in the middle of the road. In fact, it could be said that it was the defendant who stopped the officer. The officer testified that he stopped his vehicle because the defendant was standing in the middle of the road." The court found that under section 316.130, Florida Statutes, the officer could have stopped the defendant for that fact alone.

The court noted the officer was responding to a BOLO, the defendant fit the limited description given, was sweating profusely, out of breath, and located a short distance from the abandoned vehicle. "[G]iven the totality of the circumstances, the court cannot find that the initial stop of the defendant was unreasonable or unlawful." Lastly, the court found "the exclusionary rule should not be applied to any evidence under the unique facts and circumstances of this case."

After accepting a negotiated plea, the court adjudicated the defendant guilty, and sentenced him to eighteen months' imprisonment with 423 days' jail credit, to be followed by two years of drug offender probation on counts I, III, and IV, and to 365 days in jail with 423 days' jail credit on Count V. All sentences were to run concurrently. From his convictions and sentences, the defendant now appeals.

The defendant argues his detention was illegal as was the search and seizure of his property. He argues that he was already in custody without probable cause when the methamphetamine was found under his foot. Alternatively, he argues the search was not justified under *Terry* since there was no proof that he had committed a crime.

The State responds that the officer had a well-founded, articulable suspicion of criminal activity to detain the defendant based on the totality of the circumstances. It asserts that temporarily handcuffing the defendant was reasonable under the circumstances because the officer was waiting on back-up and was concerned the defendant might flee. The State argues it was reasonable to search the defendant based on the bulge in his pocket and his prior actions. The officer could also have been concerned about the second person in the abandoned vehicle, who was still at large.

"Motions to suppress present mixed questions of law and fact, and generally come clothed with a presumption of correctness. Facts

4

supported by competent, substantial evidence are accepted as true, but we review legal issues *de novo*." *Lindo v. State*, 983 So. 2d 672, 675 (Fla. 4th DCA 2008) (internal citations omitted).[2]

The first level of a police-citizen encounter is a "consensual encounter and involves only minimal police contact." *Popple v. State*, 626 So. 2d 185, 186 (Fla. 1993). Here, the officer's initial approach and conversation with the defendant was just that, a consensual encounter. The officer simply asked his name and if he knew anything about the abandoned vehicle.

But, the level of encounter changed when the officer returned from speaking with the resident, handcuffed the defendant, and began a pat-down leading to a search of his person. The question then becomes whether the officer had reasonable suspicion to detain the defendant, and to conduct not only a pat-down, but a search. The answer is no.

"To conduct an investigatory stop, a police officer must have 'a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.'" *Gaines v. State*, 155 So. 3d 1264, 1268 (Fla. 4th DCA 2015) (quoting *Popple*, 626 So. 2d at 186). Here, the only description given to the officer of the two people in the car was race and gender. No other physical description, height, weight, hair, age, not even clothing, was given. The officer came upon the defendant three-hundred yards away from the abandoned vehicle as he stood in the street conversing with a resident.

The officer testified the defendant was sweating profusely and out of breath, but admitted that it was warm that day. The defendant explained that he was walking home from a park approximately one mile to one-and-a-half miles away. When the officer spoke with the resident, she advised that she did not know the defendant, but gave no other indication that the defendant had done anything wrong.

The trial court found the officer had probable cause that the defendant had violated section 316.130, Florida Statutes, which gave him cause to stop and detain him. However, none of the applicable subsections apply. Subsection (3) prohibits pedestrians from walking along or on a roadway where there are sidewalks. § 316.130(3), Fla. Stat. (2014). There was no testimony concerning sidewalks. Subsection (4) requires pedestrians to

---

[2] The State argues the defendant failed to preserve his right to appeal the order on the motion to suppress because the trial court failed to find the motion dispositive. We disagree. *See Aikens v. State*, 80 So. 3d 1121, 1122–23 (Fla. 4th DCA 2012); *J.J.V. v. State*, 17 So. 3d 881, 883 (Fla. 4th DCA 2009).

walk along the shoulder when there are no sidewalks. *Id.* § 316.130(4). Once again, there was no evidence that sidewalks existed.

Subsection (5) prohibits a person from standing in the portion of a roadway paved for vehicular traffic, but only if it is for the "purpose of soliciting a ride, employment, or business from the occupant of any vehicle." *Id.* § 316.130(5). There was no testimony that the defendant was soliciting anyone for anything. And, subsection (6) prohibits a person from standing on or near a street "for the purpose of soliciting the watching or guarding of any vehicle while parked or about to be parked." *Id.* § 316.130(6). But, there was no testimony that the defendant was watching or guarding a vehicle.

Further, "violation of this section is a noncriminal traffic infraction." *Id.* § 316.130(19). This would have allowed the officer to stop the defendant to write him a citation, but nothing else. In short, the officer did not have reasonable suspicion to detain and handcuff the defendant.

"Courts have generally upheld the use of handcuffs in the context of a *Terry* stop where it was *reasonably necessary to protect the officers' safety or to thwart a suspect's attempt to flee.*" *Reynolds v. State,* 592 So. 2d 1082, 1084 (Fla. 1992) (emphasis added). The problem here is that there was neither an indication that the defendant was attempting to flee nor that he was armed.

What the officer had was a hunch the defendant may have come from the abandoned vehicle, but he had no meaningful description of anyone, the defendant did nothing unusual except sweat, and the defendant obeyed the officer's directive to remain in place while the officer talked to the resident. The defendant gave the officer no reason to suspect he would flee and no reason to suspect he was armed or dangerous.

The officer simply had no reasonable suspicion to detain the defendant. Placing the defendant in handcuffs constituted an unlawful stop, which was then compounded by the officer's unlawful search. While handcuffed, the officer patted the defendant down. Finding nothing that suggested a weapon, the officer reached into the defendant's pocket and removed his cell phone and cigarette paper.

"Case law consistently holds that an officer must have a reasonable belief that their safety is in danger, and, if so, must limit their contact to performing only a pat-down search." *G.M. v. State,* 172 So. 3d 963, 966 (Fla. 4th DCA 2015). The officer exceeded the permissible scope of a pat-down even if he had reasonable suspicion, which he did not. *Melendez v.*

6

*Sheriff of Palm Beach Cnty.*, 743 So. 2d 1145 (Fla. 4th DCA 1999) (holding continued handcuffing of the defendant was unauthorized where law enforcement found no weapons when searching the defendant, there was no suspicion of flight, and the defendant was cooperative).

This means the trial court should have excluded the methamphetamine found after the officer handcuffed and searched the defendant. *Williams v. State*, 993 So. 2d 1179, 1182 (Fla. 4th DCA 2008) ("Appellant's attempted disposal of the marijuana and the discovery of the methamphetamine followed the illegal seizure, so they must be suppressed as the fruits of the poisonous tree.").

Because the detention, the pat-down, and the search were unlawful, the court erred in denying the motion to suppress. We therefore reverse the order denying the motion to suppress and remand the case to the trial court to vacate the defendant's plea.

*Reversed and Remanded.*

WARNER, J., and GILLEN, JEFFREY DANA, Associate Judge, concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***